**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**CROCODILES CONSTRUCTION, INC.,**
**a New Mexico corporation,**

　　　　　Plaintiff,

vs.　　　　　　　　　　　　　　　　　　　　Civ. No. 02-1597 ACT/LFG

**JANE FONDA, an individual, et al.,**

　　　　　Defendants.

**MEMORANDUM OPINION AND ORDER**

　　　　**THIS MATTER** comes before the Court upon Jane Fonda's ("Fonda") and Forked Lighting

Ranch Trust's ("Ranch") (collectively "Fonda Defendants") Motion for Summary Judgment filed July

8, 2003. Docket No. 32. Fonda has moved for summary judgment on the grounds that the claims of

Plaintiff, Crocodiles Construction, Inc., ("CCI") against the Fonda Defendants are barred by res

judicata or, alternatively, collateral estoppel. The issue before the Court is whether CCI's copyright

infringement claim asserted in this lawsuit, is barred by a previous arbitration proceeding and award

under the doctrine of res judicata or collateral estoppel.  Pursuant to 28 U. S. C. § 636(c) and Fed.

R. Civ. P. 73(b) the parties have consented to a magistrate judge to preside over this matter.  Upon

review of the pleadings and being otherwise advised in the premises, the Court finds that the Fonda

Defendants' Motion is well taken and will be granted.

　　　**Legal Standard**.

　　　Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56; *Quaker State Minit-Lube v. Firemans Fund Ins. Co.*, 52 F. 3d 1522, 1527

( 10th Cir. 1995). When applying this standard, a court must view the evidence and draw reasonable

inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel.*

*Dept of Mental Health & Substance Abuse Servs.*, 165 F. 3d 1321, 1326 (10th Cir. 1999).

**Background.**

The following facts are undisputed:[1] Fonda and CCI executed an Agreement--Part 1,

Preliminary Design, Planning and Mobilization Services ("Design Contract") on or about July 26,

2000.  The parties agreed that CCI would design, build and/or remodel several structures on the

Ranch, including a one story main residence ("River House").  The Design Contract covered "all

professional design services and all labor, materials and equipment used or incorporated in such

design, planning and associated mobilization activities" that CCI was to perform on the Project.

Design Contract ¶1.1.1.  The Design Contract contained an arbitration clause.  The parties anticipated

that after the Design Contract was executed, they would sign a Part 2 Agreement which would be

negotiated for "the construction phase of the Project." *Id.* at ¶¶1.1.2 and 2.2.5. The parties did not

execute a Part 2 construction contract.  However, CCI delivered bids to Fonda, completed

demolition, construction and repair on some of the buildings and by February 2001, CCI began work

on the River House.

On or about August 27, 2001, Fonda sent a letter, through her attorney, terminating CCI as

---

[1]CCI states in its Response that Fonda Defendants' Statement of Material Facts Nos. 1-11 are undisputed.  However, CCI did not controvert the remaining Material Facts Nos. 12-22.  Thus, pursuant to D.N.M.LR-Civ. 56.1(b), Defendants' Statement of Material Facts Nos. 1-22 are "deemed admitted."

the contractor for the Project and engaged Defendant Denman & Associates, Inc., to continue

construction on the River House.  Following the termination of its construction services, CCI made

claims against Fonda for an alleged violation of the Design Contract in terminating its services, for

payments for services already performed, and for other damages.

On or about May 13, 2002, Fonda and CCI entered into an Arbitration Agreement which

stated in part:

> Whereas, [the Design Contract] contains a provision requiring that claims, disputes and other matters in question between Fonda and CCI be decided by arbitration...
> Whereas, a dispute has arisen between Fonda and CCI, *which includes* CCI's claims to payment under [the Design Contract], CCI's claim of lien, CCI's claim that Fonda breached the [Design Contract], CCI's claims for damages flowing therefrom, and CCI's defenses to Fonda's claims, Fonda's claims that CCI charged more than it was entitled to, Fonda's defenses to CCI's claims, CCI's account of how it spent monies received from Fonda and Fonda's claims for damages and other issues related to CCI's work (hereinafter referred to as the dispute");
> ....
> Now, therefore, the Parties agree as follows:...
> 2.       The *disputes between the Parties arising out of and relating to the matter*s *specified above shall  be decided by arbitration* in accordance with this Agreement; it being the *express intention of the Parties that this arbitration resolve all those claims*, counterclaims and defenses between these Parties.
> (emphasis added)

Each party selected an arbitrator and agreed to the selection of the third arbitrator.

Upon learning that CCI intended to pursue a copyright infringement lawsuit, Fonda filed an

"Application for Order Compelling Arbitration" in state district court on July 10, 2002.

On July 15, 2002, CCI filed a Complaint alleging copyright infringement.  *Crocodiles*

*Construction, Inc. v. Jane Fonda, Forked Lightning Ranch Trust, Design Solutions, and Denman*

*and Associates,* No. 02CV0836 (D.N.M.).  As to claims against Fonda and Ranch, the complaint

duplicates the Complaint filed in this action in all material respects.  The Complaint was voluntarily

dismissed by CCI on July 25, 2002.

On July 19, 2002, Fonda filed a motion to vacate the scheduled arbitration, asserting, *inter alia*, that either the federal court or state court needed to decide whether CCI's copyright claims are subject to arbitration and that insufficient time remained to prepare for copyright infringement claims. CCI opposed the motion. On July 31, 2002, the Arbitration Panel heard argument on Fonda's motion to vacate the arbitration hearing. On August 1, 2002, the Arbitration Panel denied Fonda's motion to vacate and set the arbitration hearing for August 26, 2002.

On August 8, 2002, CCI served its Demand Arbitration Brief in Support on Fonda's attorneys. The parties exchanged documents and took ten depositions, including the deposition of Fonda; CCI's president Anthony Wieland; Defendant Walter Drew; and the president of Defendant Denman & Associates. The arbitration commenced August 27, 2002, and continued through August 31, 2002. During the arbitration fourteen witnesses testified and the parties had an opportunity to cross examine the witnesses. On September 12, 2002, the Arbitration Panel rendered a written decision. The Panel awarded CCI the sum of $1,936,582.87. Neither Fonda nor CCI appealed the Arbitration Award. The arbitration award, less an agreed upon deduction, was paid by Fonda to CCI in full settlement of the award. CCI filed this action on December 19, 2002.

In the arbitration proceeding, CCI identified the respondent as "Jane Fonda, d/b/a... Forked Lightning Ranch Trust." Arbitration Brief, ¶6. The Ranch Trust is a fully revocable trust created by Fonda for the sole purpose of owning the Ranch.

**Analysis.**

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq*. "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as

other contracts." *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 24 (1991).  The Act states

that in transactions involving commerce, an agreement to settle disputes by arbitration "shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract."  9 U.S.C. §2.  "Section 2 is a congressional declaration of a liberal federal policy

favoring arbitration agreements..." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460

U.S. 1, 24 (1983).  Thus, "any doubts concerning the scope of arbitrable issues should be resolved

in favor of arbitration." *Williams v. Imhoff*, 223 F.3d 758, 764 (10th Cir. 2000)(citations omitted).

Copyright infringement claims may be subject to mandatory arbitration. *Kamakazi Music Corp. v.

Robbins Music Corp*., 684 F.2d 228, 231 (2nd Cir. 1982).

As in any contract case, the parties' intent is controlling with regard to whether they agreed

to arbitrate a particular dispute, and determining intent is a question of law for the court. *Armijo v.

Prudential Ins. Co*., 72 F.3d 793, 797 (10th Cir. 1995).  Absent a clear contractual intent to exclude

certain claims or to follow a different substantive law, the FAA controls, with its presumption of

arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995).   Whether New

Mexico or federal law governs the Court's decision on the res judicata effect of an arbitration award

has not been decided by the Tenth Circuit Court of Appeals. Federal law and New Mexico law are

similar on this issue.  The Tenth Circuit requires four elements in determining whether to apply res

judicata in a particular case:  (1) prior suit ended with a judgment on the merits; (2) parties were

identical or in privity; (3) same cause of action was alleged in both suits; and (4) plaintiff had a fair

opportunity to litigate its claims in the prior suit. *Nwosun v. General Mills Restaurants*, 124 F.3d

1255, 1257 (10th Cir. 1997).  New Mexico also considers these elements as well as whether the

capacity or character of parties and the subject matter are the same in both actions. *Myers v. Olson*,

100 N.M. 745, 747, 676 P.2d 822, 824 (1984).

> l. The arbitration awarded was a final judgment on the merits.

On September 12, 2002, the arbitration panel issued its Award which gave CCI $1,936,582.87. The Award specifically stated that '[a]ll other claims, counterclaims or defenses raised by the parties are denied." Award, ¶8.  The parties did not appeal the award.  An arbitration award is a final judgment.  *Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 625-26, 857 P.2d 22, 25-26 (1993); see also *Restatement (Second) of Judgments* §84(1) (1982)("a valid and final award by arbitration has the same effect under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court").

CCI argues that copyright infringement was not "within the scope of submission" and thus the award was not final as to CCI's copyright infringement claim. What CCI chose to submit to the arbitration panel is not the issue. Rather the scope of arbitration is the relevant inquiry and is discussed below.

> 2. The parties are identical and have the same capacity in both actions.

CCI was the petitioner in the arbitration.  In the arbitration, CCI made claims against Fonda. In this action, CCI has sued Fonda and the Ranch Trust.  The revocable Ranch Trust was created solely for the purpose of owning the Ranch.  The only allegation against the Ranch Trust is that it owns title to the Ranch which is the personal residence of Fonda.  Complaint, ¶¶6, 13 and 16.  Thus, the parties are identical in both the arbitration and in this matter.

Moreover, the parties have the same "capacity or character of persons for or against whom the claim is made." *Three Rivers Land Co., Inc. v. Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982) *overruled on other grounds by* Universal Life Church v. Boxon, 105 N.M. 57, 59, 728 P.2d

467, 469 (1986).  Capacity is relevant as to whether an individual is sued in an individual capacity or in some other capacity such as trustee, guardian or agent.  See, e.g., *Three Rivers Land Co.*, 98 N.M. at 694, 652 P.2d at 244 (capacity as trustee); *Chaara v. Lander*, 2002-NMCA-053, ¶12, 45 P.3d 905 *(c*apacity as attorney), *cert. denied* No. 27, 485 (2002); *Myers*, 100 N.M. at 747, 676 P.2d at 824 (capacity as grantee).  In *Three Rivers Land Co., Inc.* the New Mexico Supreme Court stated the reasoning for this requirement:  "[T]he requirement that a party be in the same or similar legal capacity in a suit relates to the fundamental precept that 'a person cannot be bound by a judgment unless he has had reasonable notice of the claim against him and an opportunity to be heard in opposition to that claim.'"  *Id.* at 694.

CCI argues that Fonda was sued in a different legal capacity because of the different legal theories asserted.  CCI asserts that in the arbitration Fonda was named as a "contractee" in a breach of contract dispute.  In this matter Fonda is sued for copyright infringement and her liability is vicarious or as a contributing infringer.  Such an argument is without merit. As discussed above, the issue is not the different legal theories asserted but the capacity of the parties.  Clearly, Fonda was sued in both actions in her individual capacity.

       3.       This suit and the arbitration arose out of a single cause of action.

For purposes of res judicata, the Tenth Circuit and New Mexico apply the transactional approach to determine what constitutes a single cause of action.  See e.g., *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988); *Strickland v. City of Albuquerque,* 130 F.3d 1408 (10th Cir. 1997); *Myers*, 100 N.M. at 747, 676 P.2d at 824.  Under this approach, res judicata extinguished "all rights...with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."  *Petromanagement*, 835 F.2d at

1335 (quoting *Restatement (Second) of Judgments* §24(1)).  Whether events constitute a transaction

or series of connected transactions is determined by looking at three facts:  "whether the facts are

related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether

their treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Id*.; see also *Chavez v. City of Albuquerque*, 1998-NMCA-004, ¶22, 952 P.2d 474.

It does not matter that CCI did not submit its copyright claims to arbitration or that copyright

claims were not specifically mentioned in the Demand for Arbitration.  Whether the cause of action

in this matter arose from the same cause of action brought before the arbitration depends not upon

the legal theories of liability pursued but whether the same operative facts form the basis of both

actions.  *Santa Fe Village Venture v. City of Albuquerque*, 914 F. Supp. 478, 481 (D.N.M. 1995).

Claim preclusion does not depend upon whether the claims arising out of the same transactions were

actually asserted in the original action.  The doctrine bars claims that were or could have been

brought in the prior proceeding.  *Strickland* 130 F.3d at 1413; *Pacheco v. Quintana*, 105 N.M. 139,

143, 730 P.2d 1, 3 (Ct. App. 1986).

The same operative facts form the basis of CCI's claims, namely Fonda's discharge of CCI

and subsequent use of the plans and drawings to complete the Project.  CCI's claims in both

proceedings involve actions by the same people, Fonda and CCI.  Both actions arose as a result of

Fonda's decision to terminate CCI as the builder on the project.  The actions supporting all claims

occurred within a very short period of time:  in late August of 2002, CCI was terminated and within

two weeks, Fonda hired Denman & Associates which immediately began work on the Project.  All

these actions occurred prior to the commencement of the arbitration.

In this action, CCI claims that the Fonda Defendants owe it money for using, in completing

the Project, the plans and drawings CCI created for the Project pursuant to the Design Contract.  In the arbitration, CCI claimed that Fonda owed it for all its work on the Project, for lost profits and for damages arising out of Fonda's breach of the Design Contract termination provision by terminating it without cause.  The Design Contract expressly included provisions concerning the creation, ownership and use of the drawings, specifications and other documents.  Thus, CCI's claims in both proceedings involve claims for wrongful termination, lost profits and nonpayment for work done on the project, including work on plans and drawings and claims for using those plans and drawings to complete the Project.  CCI's claims clearly arise from the same transaction.  *Petromanagement*, 835 F.2d at 1336 ("...a 'contract' is generally considered to be a 'transaction,' so that all claims of contractual breach not brought in an original action would be subject to bar of claim preclusion, so long as the breaches antedated the original action"); *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1239 (10th Cir. 1992)(unpaid overtime, back and front pay under ADEA, damages under Equal Pay Act, fees and costs all part of a single transaction for res judicata purposes).

CCI also asserts that this action does not "arise out of or relate to" the matters that were subject to the arbitration agreement.  An arbitration agreement is to be interpreted by the rules of contract law, giving effect to the literal meaning of its terms.  *Christmas v. Cimarron Realty Co.*, 98 N.M. 330, 332, 648 P.2d 788, 790 (1982).  As cited above, the parties intended to arbitrate matters specified in the Demand for Arbitration which included, but were not limited to Plaintiff's claims for payment under the Design Contract and for damages flowing from Fonda's alleged breach of contract.  The Design Contract specifically addresses the ownership rights in the design and plans and under what conditions Fonda has the right to complete the project.  The Arbitration Agreement specifically refers to the Design Contract as the basis for the arbitration and the claims involved in the

dispute between Fonda and CCI.  The parties agreed to arbitrate the disputes "arising out of and

relating to" specified matters.  The claims for copyright infringement arise out of or relate to the

Design Contract.  *Coors Brewing Co. v. Molsen Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995)

(parties do not have to mention specific types of dispute in their arbitration clause to make them

subject to arbitration).  The agreement states that "[t]he disputes between the Parties arising out of

and relating to the matters specified above shall be decided by arbitration...it being the express

intention of the Parties that this arbitration resolve **all** those claims, counterclaims and defenses

between these parties."  Arbitration Agreement, ¶2 (emphasis added).  Moreover, the agreement does

not exclude copyright infringement or any other claims.

Finally, CCI asserts that the Arbitration Panel "implicitly ruled that the merits of the

[copyright] claim would have to be tested at a later time."  Response, p.10.  There is no factual basis

to support this conclusion.  In addition, as noted above, the issue of the parties intent and therefore

the scope of arbitration is a question of law to be decided by the court.  *Armijo*, 72 F.3d at 979.

4.      The subject matter is the same in both actions.

This action and the arbitration are based on the Design Contract, design and construction

work done on the Ranch and Fonda's decision to terminate CCI as the building contractor.  CCI does

not seriously dispute that this element has been met.[2]

5.      CCI had a full and fair opportunity to litigate its claims in arbitration.

The full and fair opportunity requirements concern whether "there were significant procedural

---

[2]CCI relies on Ohio and New York law that res judicata
applies only when the evidence and facts essential to proving the
second proceeding were presented in the first.  This is not
required under Tenth Circuit or New Mexico law.

limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *Sil-Flo*, *Inc. v. SFHC, Inc*., 917 F.2d 1507, 1521 (10th Cir. 1990).   The undisputed facts demonstrate that Plaintiff had a full and fair opportunity to litigate all issues in this matter.  CCI initiated and actively pursued the arbitration process.  Each party was represented by counsel.  The parties engaged in extensive discovery prior to the arbitration.  Numerous documents were exchanged.  CCI had the opportunity to call witnesses and to cross-examine witnesses during the proceedings.  Much was at stake in this matter as CCI was asserting a clam for $9,974,012.00 in compensatory damages and $29,922,036.00 in punitive damages.  Moreover, as discussed above, the scope of the Arbitration Agreement included copyright infringement claims.

CCI argues that it did not have a full opportunity to litigate  because of the time constraints in the arbitration proceedings.   There are no facts supporting any time constraints.   CCI was terminated on August 27, 2001.  The arbitration commenced on August 27, 2002.  CCI had a year to prepare for the arbitration.  CCI opposed the motion to vacate to allow Fonda additional time to prepare for the copyright claims against her. In the arbitrator's letter of August 1, 2002, denying Fonda's motion to vacate, there is no mention that the panel would not consider all claims between the parties. CCI's Response, Exhibit. E.

Moreover, CCI was aware that Fonda took the position that any copyright claims were subject to arbitration. On July 10, 2002, Fonda filed a state court action to compel arbitration of the copyright claim.[3]  Fonda sought a continuance of the arbitration on the grounds that a court needs

---

[3]It appears from the record before the Court that the state court did not rule on this issue prior to the arbitration.

to decide whether CCI's copyright claims are subject to arbitration and that insufficient time remained

to prepare for copyright infringement claims.  CCI opposed the motion.  Furthermore, it is unclear

in what forum CCI thought the copyright infringement claims would be determined.  CCI voluntarily

dismissed its Complaint in federal court for copyright infringement on July 25, 2002, about a month

prior the arbitration.  This was at the same time CCI vigorously opposed any continuation of the

arbitration proceedings.

CCI relies on the affidavit of its counsel, William J. Waggoner ("Waggoner affidavit").  When

an affidavit is submitted in opposition to a summary judgment motion, it must be based on personal

knowledge, must set forth facts that would be admissible at time of trial, and must establish the

affiant's competence to testify.  Fed.R.Civ.P. 56(e).  Thus, the court cannot consider statements that

are hearsay, legal opinions or conclusions, statements not made on personal knowledge or conclusory

statements.   In ¶¶ 9 and 10, Waggoner states his understanding of the phrase "arising out of and

relating to."   Clearly, this is a legal opinion or conclusion not a fact.  In numerous paragraphs,

Waggoner states what the arbitration panel understood or intended.  Waggoner affidavit, ¶¶ 12 and

13. Again this is opinion testimony or hearsay and not admissible evidence.  Moreover, when

Waggoner states his understanding that the intellectual property claims were not being arbitrated

these statements are conclusory and self-serving and thus not admissible. Id. at ¶ 20;  *Wells v.*

*Shalala*, 228 F.3d 1137, 1144 (10th Cir. 2000).  Simply put, the Waggoner affidavit does not create

a genuine issue as to any material fact.  The Court also notes that in argument before the Arbitration

Panel regarding Fonda's Motion to Vacate the arbitration hearing, counsel for CCI acknowledges that

the infringement claims are subject to arbitration.  CCI Response, Exhibit D.

CCI also relies on an affidavit by Barbara J. Jackson ("Jackson affidavit"), one of the three

12

arbitrators which states that it was her understanding that the Arbitration Panel was not to consider any intellectual property claims. Likewise, the Jackson affidavit is not helpful to CCI. As discussed above, whether CCI chose to exclude these claims from arbitration is not the relevant issue. Moreover, "in a judicial...proceeding, an arbitrator...is not competent to testify." NMSA §44-7A-15(d)(2003). Furthermore, to the extent Ms. Jackson is testifying for the other two members of the panel, the affidavit is hearsay and thus not admissible evidence. *Hassneh Ins. Co. of Isr. v. Paladin Reinsurance Corp.*, 1991 U.S. Dist. LEXIS 16997, No. 90-CIV-5039, 1991 WL 258776, at *1 (S.D. N.Y. Nov. 22, 1991) (unpublished).

CCI also argues it did not have a fair opportunity to arbitrate the copyright claim because the alleged primary infringers were not parties to the arbitration. Contributory or primary infringers are not indispensable parties in a contributory infringement and vicarious liability suit. See 3 Melville R. Nimmer, *Nimmer on Copyright* §12.03 at 12-69; *Id.* §12.04[C][4] at 12-128. An indirect infringer can be held liable without a finding of liability against the direct infringers. *Id.* §12.04[a][3][a], at 12-89.

**Conclusion.**

Res judicata bars CCI from litigating its copyright claim against the Fonda Defendants in this action. Both the arbitration and this action involve the Design Contract, the design and construction of Fonda's home and the termination of CCI as a builder. The acts, evidence, and witnesses upon which Fonda and CCI would rely in each forum are "'related in time, space, origin, or motivation, [and]..form a convenient trial unit.'" *Petromanagement*, 835 F.2d at 1335. "Once the plaintiff chose to seek judicial relief in [arbitration], the interests of the Court and of society in bringing litigation to

a close weighed heavily in favor of requiring him to assert all available claims relating to his termination in a single action." *Strickland*, 130 F.3d at 1413. "The piecemeal litigation presented by the current action poses exactly the type of situation to which the doctrine of res judicata is properly addressed." *May v. Parke-Abbott Transfer & Storage, Inc.*, 663 F. Supp. 22, 24 (D. Colo. 1987), *aff'd in part and rev'd in part*, 899 F.2d 1007 (10th Cir. 1990).

**IT IS THEREFORE ORDERED** that Jane Fonda's and Forked Lightning Ranch Trust's Motion for Summary Judgment is granted and Crocodile Construction, Inc.'s claims against Jane Fonda and Forked Lighting Ranch Trust are dismissed with prejudice.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**